IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS - EL PASO DIVISION

| | | |
|---|---|---|
| EL PASO PARENTS,<br>Sargon Bebla, Cassandra Bebla, Dana Garner,<br>Andrea Hartley, Alofagia Oney, Denise Prieve,<br>Michelle Rechtien, Jessica Lizette, Rodriguez,<br>William C. Roll, Jr., Elichia Rountree, and Joseph<br>Madrid, for themselves and minor children,<br> Plaintiffs,<br><br>v.<br><br>EL PASO INDEP'T SCHOOL DIST.,<br>Leah Hanany, Al Velarde, Josh Acevedo, Isabel<br>Hernandez, Israel Irrobali, Freddy Khlael Avalos,<br>and SOCORRO INDEPENDENT SCHOOL DIST.<br> Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 3:21-CV-298-KC |

**PLAINTIFFS' RESPONSE TO
EL PASO DEFENDANTS' MOTION TO DISMISS**

Come now, EL PASO PARENTS, et al. ("Plaintiffs" herein), to respond and object to El Paso Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)1 and 12(b)6 (ECF Doc. 11).

Summarizing, Plaintiffs "El Paso Parents" are proper parties in this suit who possess both capacity and standing pursuant to the Texas Business Organizations Code §252.007. Furthermore, the IDEA exhaustion of administrative remedies requirement does not bar Plaintiff's recovery under the Supreme Court's analysis used in *Fry v. Napoleon Cmty. Sch*. Additionally, Plaintiffs have properly plead equal protection, due process, and Texas constitutional claims.

## TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................................ 4
II. ARGUMENTS AND AUTHORITIES ................................................................................... 4
   A. Standard of Review for 12(b)(1) Motion ............................................................................ 4
      i. Standing ........................................................................................................................ 5
      ii. Failure to Exhaust Administrative Remedies ............................................................... 6
   B. Rule 12(b)(6) Arguments .................................................................................................. 12
      i. Standard of Review for Rule 12(b)(6) motions .......................................................... 12
      ii. Equal Protection Claims ............................................................................................. 12
      iii. Due Process Claims .................................................................................................... 14
      iv. Texas State Constitution ............................................................................................. 15
      v. Uniform Declaratory Judgment Act (UDJA) ............................................................. 16
III. PRAYER ................................................................................................................................ 20

INDEX OF AUTHORITIES

**Cases**
*Ackers v. City of Lubbock*,
   253 S.W.3d 770 (Tex.App.—Amarillo, 2007, no pet.) ........................................ 18
*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) ................................................... 12
*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 746 (2017) ........................ 8, 9, 10, 11
*Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622, 623 (6th Cir. 2015) ............................ 10
*Goss v. Lopez*, 419 U.S. 565, 579 (1975) ............................................................... 14
*Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ................................. 5
*Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 205(5th Cir. App. 1994) ........... 12
*Johnson v. Wells*, 566 F.2d 1016 (5th Cir.1978) ..................................................... 12
*Miller v. Stanmore*, 636 F.2d 986 (5th Cir.1981) ................................................... 12
*Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42 (1st Cir. 2003) ............................... 5
*Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*,
   176 S.W.3d 746, 752 (Tex. 2005) ................................................................. 15, 19

**Statutes**
20 U.S.C.S. § 1401 ............................................................................................ 6, 7, 8, 9
Tex. Civ. Prac. & Rem. Code § 37 ........................................................................... 17
Tex. Educ. Code § 28.001 ........................................................................................ 19
Tex. Educ. Code § 4.001 .......................................................................................... 19
Texas Business Organizations Code § 252 ................................................................ 5
Texas Constitution Article VII, § 1 ........................................................ 15, 16, 19, 20
Texas Education Code §7.057 ................................................................................... 6

**Rules**
Fed. R. Civ. P. 12(b)(1) .............................................................................................. 4
Fed. R. Civ. P. 12(b)(6) ............................................................................................ 12

## I. BACKGROUND

1. Plaintiffs filed an action against El Paso Independent School District and its board of trustees originally in state district court in October 2021 for its illegal mask mandate forcing children to wear face coverings against science and logic. El Paso then filed to remove the case to federal court in December. Plaintiffs then amended their complaint against El Paso ISD and added Socorro ISD as an additional plaintiff.

2. Plaintiffs are an unincorporated association of concerned parents whose children have suffered harm under the illegal mask mandates of El Paso and Socorro ISD. El Paso ISD admits that it had a policy requiring all students, employees, and visitors to wear a face covering when inside the school district's building and vehicles.

## II. ARGUMENTS AND AUTHORITIES

### A. Standard of Review for 12(b)(1) Motion

3. Defendants have submitted a motion to dismiss under Rule 12(b)(1) and 12(b)(6). Fed. R. Civ. P. 12(b)(1) seeks dismissal for lack of subject-matter jurisdiction.

4. Defendants removed the case to federal court from state court and now seek to have it dismissed for lack of subject matter jurisdiction. As the Defendants motion points out, "the burden of established federal jurisdiction lies on the party

seeking the federal forum." *Howery v. Allstate Insurance Company*, 243 F.3d 912, 916 (5th Cir. 2001).

5. Plaintiffs believe that granting Defendants' Motion under Rule 12(b)(1) would be to reward duplicitous tactics and also assert that this Court does have jurisdiction over the case at hand. For these reasons, Defendants' Motion to Dismiss should be denied.

6. In the alternative, if this Court finds that it lacks subject matter jurisdiction under Rule 12(b)(1), its proper course of action take is to remand the case back to state court. *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42 (1st Cir. 2003).

   i. *Standing*

7. Defendants argue that Plaintiffs lack standing as "El Paso Parents." However, the Texas Business Organizations Code § 252.007 allows a nonprofit association has legal capacity to "institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding." El Paso Parents is a nonprofit association based on the definition found in the Texas Business Organizations Code §252.001,

> "Nonprofit association" means an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose.

8. Defendants' motion to dismiss based on lack of capacity and standing should be denied by this Court.

      *ii.*    *Failure to Exhaust Administrative Remedies*

9. Defendants argue that Plaintiffs failed to exhaust their administrative remedies with the Texas Commissioner of Education. Plaintiffs are not required to seek redress with the Commissioner of Education. As the Texas Education Code §7.057 states, "a person *may* appeal in writing to the commissioner if the person is aggrieved by: the school laws of this state; or actions or decisions of any school district board of trustees that violate the school laws of this state." *(emphasis added).* As is evident from the plain language of the Education Code, the appeal to the Commissioner of Education is permissible, but not required.

10. Plaintiffs were not required to pursue an administrative remedy with the Texas Commissioner of Education before pursuing action in a court of law. Therefore, Defendants' Motion should be denied inasmuch as it is predicated upon Plaintiffs' alleged failure to exhaust administrative remedies.

11. Defendants also argue that Plaintiffs were required to allege that they have exhausted their administrative remedies under the Individuals with Disabilities Education Act (IDEA).

12.  According to the definitions in IDEA, a "child with a disability means a child—

> with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and who, by reason thereof, needs special education and related services."

20 U.S.C.S. § 1401.

13.  The above definition does not apply to the students represented in this lawsuit. They are able to function perfectly well in a normal educational setting and do not generally require special education and related services. However, the imposition of a mask mandate by Defendants has caused them to suffer harm due to physical conditions such as asthma and post-traumatic stress. These conditions do not prevent them from learning generally, but the Defendants' actions imposing a mask mandate have created a disability in them.

14.  Furthermore, the U.S. Department of Education, the department tasked with enforcing IDEA, states on its own website that both the Rehabilitation Act of 1973 and the Americans with Disabilities Act are designed to protect the rights of children in public elementary and secondary schools.[1] Section 300.516 of its regulations about civil actions states, "Nothing in this part restricts or limits the

---

[1] https://sites.ed.gov/idea/about-idea/#Rehab-Act

rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities…"[2]

15. Critically, Defendant's neglect to factor in the Supreme Court of the United State's analysis in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 746 (2017).

16. *Fry* addresses the circumstances in which parents must exhaust the administrative remedies found in the Individuals with Disabilities Education Act (IDEA) when their lawsuit purports to assert claims only under *other* federal discrimination statutes, namely, the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. The Court unanimously held that parents must exhaust IDEA's administrative procedures only when the "substance, or gravamen, of the plaintiff's complaint" seeks relief for the denial of a Free Appropriate Public Education (FAPE). *Id* at 748.

17. Children with disabilities are educated pursuant to "individualized education programs" (IEPs), which a team of school officials, educators, and parents develop to cater educational services to the specific needs of the child. The IDEA guarantees each child the right to a FAPE, which as the Court described, "comprises 'special education services and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive' services to

---

[2] https://sites.ed.gov/idea/regs/b/e/300.516

permit the child to benefit from that instruction." *Id* at 749 (quoting 20 U.S.C. §§ 1401(9), (26), (29)).

18. Parents dissatisfied with their child's IEP, believing it does not provide a FAPE, can follow a series of administrative steps to challenge the IEP, the last of which is filing a lawsuit in federal court. IDEA requires parents to complete each step (in legal terms, to "exhaust these administrative remedies") prior to filing a lawsuit. Sometimes, parents will assert in such a lawsuit that the school district's conduct also or *exclusively* violated *other* federal anti-discrimination statutes.

19. In *Fry*, the parents challenged the school district's decision to preclude their child from using a service animal in school. In the school district's view, the child's receipt of one-on-one support rendered the service animal superfluous, and the child received a FAPE through the district's implementation of the IEP. Eventually, the parents filed a federal lawsuit ostensibly asserting claims under *only* the ADA and Section 504 of the Rehabilitation Act, seeking a declaration that the district violated these statutes, as well as money damages.

20. The school district moved to dismiss the case, arguing that the parents failed to exhaust their IDEA administrative remedies. The district court granted the motion to dismiss and the United States Court of Appeals for the Sixth Circuit affirmed, holding that the parents were required to exhaust administrative remedies because "'the genesis and the manifestations' of the complained-of harms were

'educational' in nature." *Id.* at 752 (quoting *Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622, 623 (6th Cir. 2015)).

21.  The Supreme Court vacated this decision, finding the Sixth Circuit's standard incorrect. Instead, the Court held that the statute's express terms dictate that administrative exhaustion is necessary only when the suit seeks the specific relief IDEA makes available: "relief for the denial of a FAPE." *Id.* at 747.

22.  The next logical question, therefore, is how to determine when a suit that, on its face, asserts claims under other federal anti-discrimination statutes, is really seeking relief for the denial of a FAPE. The Court began its answer to this question by agreeing with a sentiment espoused by both parties: "What matters is the crux—or, in legal speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id*. In other words, courts are to ignore labels or "magic words" used by the plaintiff and instead look at the substance of the relief sought.

23.  The Court then attempted to aid lower courts in their analysis of the gravamen of the complaint by instructing courts to ask two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id* at 747. Affirmative

answers indicate that the relief sought may not be for a FAPE; negative answers indicate that the relief sought may be for a FAPE, in which case exhaustion of administrative remedies would be required. The Court also instructed lower courts to consider whether the parents had initiated and participated in some administrative steps of a FAPE challenge to the IEP, which would indicate that achieving a FAPE was their goal.

24. Both *Fry* questions must be answered affirmatively in the instant case. If a public theater or library was requiring children to wear masks without proper legal authority, against the objections of their parents, then a number of Plaintiffs' claims would survive, including those for equal protection and due process.

25. Similarly, adult plaintiffs including school staff and parents might credibly have brought similar claims for illicit enforcement of El Paso's mask mandate absent proper authorization.

26. Additionally, in the facts at bar, EPISD is creating a disability for students that exacerbates preexisting disabilities that ordinarily would not require FAPE, and therefore, no IDEA or *Fry* analysis would be necessary. However, because EPISD has directly created the disabilities that Plaintiffs now face, via imposition of the mask mandate, the IDEA is not applicable in this situation and the ADA claims are not foreclosed by it. Thus, this Court should deny Defendants' Motion. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 746 (2017).

### B. Rule 12(b)(6) Arguments

27.     Defendants argue that Plaintiffs Fourteenth Amendment Claims under the right to equal protection and due process should be dismissed for failing to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

   *i. Standard of Review for Rule 12(b)(6) motions*

28.     Thus, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. A case should not be prematurely dismissed, and a plaintiff should be permitted to develop evidence to support his claims. See *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 205 (5th Cir. App. 1994); *Miller v. Stanmore*, 636 F.2d 986 (5th Cir.1981); *Johnson v. Wells*, 566 F.2d 1016 (5th Cir.1978)).

29.     Defendants use the term "conclusory" to describe Plaintiffs' statements regarding its Fourteenth Amendment claims, but Defendants' real argument is that Plaintiff has not yet proven that what it alleges is true. As this Court is aware, it is not Plaintiffs' burden to prove the truth of its claims at this point in proceedings. Instead, any well-pleaded claims made by Plaintiff should be accepted as true and viewed in the light most favorable to Plaintiff for the purposes of what is essentially a disguised 12(b)(6) motion to dismiss. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

   *ii. Equal Protection Claims*

30.   Plaintiffs have pleaded Fourteenth Amendment Equal Protection claims and Due Process claims.

31.   Defendants assert that Plaintiffs claim should be dismissed because "reasonable people may differ on how to balance the risk of COVID-19 transmission and potential damage to children." However, Defendants fail to acknowledge the lengthy facts provided by Plaintiffs that children are not at risk from COVID-19 and that masks, especially the cloth variety, are of no value in protecting one against COVID-19 transmission. *(See Complaint paragraphs 18-62.)* Furthermore, Defendants ignore the factual assertions by Plaintiffs based on medical literature that masking damages children.

32.   This extensive factual background was provided in the complaint to show the lack of a rational basis for the mask policy, which violated Equal Protection.

33.   Students in classrooms in El Paso ISD were in fact treated differently than others in the school district. As stated in the complaint, "For example, students are not required to be masked during school plays, school photos, in close contact among players in school-sponsored football, or in the stands at indoor school-sponsored sporting events." There is no rational explanation for these exceptions if close proximity and possible transmission is the basis for the mask policy. Instead Plaintiff students were subjected to in-school suspension and other disciplinary measures for their inability to wear a mask.

34. Plaintiffs pleaded these facts of a constitutional violation of the Fourteenth Amendment's Equal Protection Clause in their complaint and those facts ought to be accepted as true and viewed in the light most favorable to Plaintiffs. Further, Plaintiffs showed that the violation occurred because of an official policy adopted by the El Paso ISD. Defendants motion to dismiss should be denied.

    *iii. Due Process Claims*

35. Defendants assert that Plaintiffs did not sufficiently plead a due process claim because they were provided opportunities for hearings. However, Plaintiff students were entitled to notice and a hearing before they suffered detention, isolation, and in-school suspension. Therefore, at the very minimum, students facing suspension and the consequent interference with a protected property interest have a Constitutionally-protected right to notice and a hearing. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). They were not provided such. They pursued grievances, but the process was a sham and did not provide the protections they are entitled to under the Due Process clause of the Fourteenth Amendments when deprived of their education.

36. Defendants motion to dismiss for failing to state a Due Process claim ought to be denied.

*iv. Texas State Constitution*

37. Defendants argue that Plaintiffs' claims under the Texas Constitution Article VII, § 1 are not proper because they must bring a claim under a Texas statute. Defendants claim that Article VII, § 1 does not create a duty for EPISD to implement it. That is not the case.

38. School districts, as the political subdivisions charged by the Legislature with implementing free public education in the state, must comply with the Constitutional requirements to maintain an efficient system of free public schools that provides for "a general diffusion of knowledge…essential to the preservation of the liberties and rights of the people." It would be ludicrous to think they are not obligated to fulfill this charge.

39. In recent cases before the Texas Supreme Court, school districts have argued that they have insufficient funding provided by the state to fulfill their obligation to provide "an efficient system of public free schools." *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 752 (Tex. 2005).

40. In that case and others in the same vein, school districts argue that they must have adequate funding to fulfill this duty. But now, El Paso ISD, which has been the beneficiary of these arguments and the attendant recapture finance payments[3], argues that they have no specific duty to these constitutional provisions.

---

[3] https://www.idra.org/resource-center/schools-would-lose-big-with-elimination-of-recapture/

41.   El Paso ISD is clearly obligated as a political subdivision of the state charged with administering the public school system, to fulfill Article VII, § 1 of the Texas Constitution.

42.   Defendants also argue that virtual learning is a quality public education because the Texas Education Code allows for Teacher certification for "virtual learning" and a virtual learning option for school districts. Virtual learning options are approved as an option and have specific requirements, but nowhere in the Texas Education Code is a student forced to participate in virtual learning over in-person learning. It is an option for families to choose if they think it best. That is not the case with Plaintiffs, who were forced into virtual learning due to the mask mandate and their students' inability to wear a mask and the refusal of El Paso ISD to grant exceptions to them.

43.   Defendants' motion to dismiss on those grounds ought to be denied.

   v.   *Uniform Declaratory Judgment Act (UDJA)*

44.   Defendants assert that the UDJA does not allow private citizens to challenge the lawfulness of government actions.

45.   The language of the Act states, "This chapter is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with *respect to rights, status, and other legal relations; and it is to be liberally construed and administered*." Tex. Civ. Prac. & Rem. Code § 37.002 (emphasis added). Further,

it gives jurisdiction to "A person…whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004.

46. Of course, Plaintiffs are not challenging GA-38 or any Texas law, so they need not implicate the State's immunity. Rather, Plaintiffs seek a declaration regarding whether a district can adopt a militant mask policy without infringing upon a student's right to a free and appropriate education, and whether such a policy violate rights which GA-38 protects.

47. Plaintiffs did not state that the Defendants may not implement any mask covering under any conditions whatsoever, but seek a declaration regarding what rights they have, as expressed above. Plaintiffs seek to determine if a vague rule comports with their rights.

48. Plaintiffs believe that EPISD cannot create rules by acquiescence to a school board's general authority to handle mundane school operations which have a substantive impact on the education of small children. Additionally, Plaintiffs believe that a school board cannot adopt a policy that is illegal under state law.

49. Plaintiffs have asserted that a militant mask rule that masks children unnecessarily is a violation of the constitutional right to an education provided in

the least restrictive environment that cannot be cavalierly abridged by a school district acting without authority. That constitutional right predates GA-38.

50. With regard to Defendants' assertion that Plaintiffs are merely challenging mundane in-house policy, no case states that the declaratory judgment claims must target laws. For example, the Amarillo Court of Appeals found in *Ackers v. City of Lubbock* that challenges to grading policies were subject to judicial examination:

> Because Tex. Civ. Prac. & Rem. Code Ann. § 37.003(c) provided that enumerations in Tex. Civ. Prac. & Rem. Code Ann. § 37.004 did not limit the exercise of powers over a declaratory action, and because the primary declaration sought by plaintiff student against a city was to resolve the validity of the city's policy which fell within the scope of the Uniform Declaratory Judgment Act, the student was not requesting monetary damages but rather a declaration that the city's policy was unconstitutional, and thus, an express statutory waiver of governmental immunity was not required.

*Ackers v. City of Lubbock*, 253 S.W.3d 770 (Tex.App.—Amarillo, 2007, no pet.).

51. Plaintiffs are persons whose rights have been affected by the actions of El Paso ISD, and therefore are entitled to seek a declaratory judgment under the statute about the validity of Defendant's actions.

52. Plaintiffs have a constitutional right to education. The Texas Constitution at Article VII, section 1 states:

> SUPPORT AND MAINTENANCE OF SYSTEM OF PUBLIC FREE SCHOOLS. A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

Article VII, section 1 of the Texas Constitution confers the right on school children for a public free school. *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 774 (Tex. 2005).

53. To fulfill the constitutional obligation under the Texas Constitution, Article VII, section 1 to provide a general diffusion of knowledge, districts must provide all Texas children access to a quality education that reasonably enables them to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation. *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 787 (Tex. 2005) (citing Tex. Educ. Code §§ 4.001(a) and 28.001).

54. Children and parents who object to the masking of minor children for extended periods of time due to concerns of physical, emotional, and psychological health are compelled to rely on virtual learning in lieu of in-person instruction, not by choice but by force.

55. Defendant's policy is a violation of the rights secured by the Texas Constitution Article VII because it sentences children to an inferior mode of education based on their parents' convictions in their best interest or the convictions of the minors. Additionally, the mask policy includes no specification for mask construction, leading to farcical "masks" made of cheesecloth or other sheer fabric that no reasonable person would suggest deters COVID-19 spread.

And yet, students with significant health concerns, learning differences, and anxiety issues are forced to comply with an irrational policy that damages their education.

56.    Plaintiffs seek a declaration that the mask policy is illegal and violates both GA-38 and the constitutionally protected rights of the students. As such, they have standing to seek a declaratory judgment concerning those rights in court. The Defendants' argument regarding lack of standing under the UDJA is in error.

### III.    PRAYER

Because Defendants treated Plaintiffs unequally to other students, irrationally and supported only with an illegal policy developed contrary to Texas law, and because they have made sufficient allegations Plaintiffs ask the Court to deny dismissal of this case, and for all other remedies to which it is entitled.

Respectfully submitted,

By: /s/ Warren V. Norred
Warren V. Norred
Texas Bar No. 24045094; warren@norredlaw.com
515 E. Border; Arlington, Texas 76010
P: 817-704-3984; F: 817-524-6686
Attorney for Plaintiffs

**Certificate of Service** – The undersigned hereby certifies that the foregoing was served on David Campbell, counsel for El Paso Defendants, and Steven Blanco, counsel for Socorro Defendants, on February 28, 2022.

/s/Warren V. Norred
Warren V. Norred, 24045094